IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 14-1076-JDT-egb |
| | ) | |
| MICHAEL DONAHUE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DIRECTING CLERK TO MODIFY THE DOCKET,
ADDRESSING PENDING MOTIONS (ECF Nos. 32, 37, 38 & 41),
GRANTING MOTION FOR SUMMARY JUDGMENT (ECF No. 46),
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

The *pro se* Plaintiff, Christopher Howard, a Tennessee Department of Correction ("TDOC") prisoner who is currently an inmate at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee,[1] filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on April 3, 2014. (ECF No. 1.) The Court subsequently granted leave to proceed *in forma pauperis* and assessed the filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF Nos. 9 & 12.) On September 30, 2014, the Court issued an order addressing several pending motions, partially dismissing the complaint, and directing that process be issued and served on Defendant Melissa Breitling, M.D., a physician who provided medical care for inmates at the HCCF. (ECF No.

---

[1] At the time the complaint was filed, Plaintiff was incarcerated at the Hardeman County Correctional Facility. (ECF No. 1 at 1.) Although he has not submitted a change of address, the TDOC's Felony Offender Information website shows that he is currently housed at the SCCF. *See* https://apps.tn.gov/foil-app/search.jsp. Therefore, the Clerk is directed to MODIFY the docket to reflect that Plaintiff's address is the SCCF, P.O. Box 279, Clifton, TN 38425-0279, and to mail a copy of this order to him at that new address.

18.) After Defendant was served, she filed an answer to the complaint on March 30, 2015. (ECF No. 33.)

On March 23, 2015, Plaintiff filed a motion to reconsider the order of partial dismissal (ECF No. 32-1), and Defendant filed a response in opposition (ECF No. 36). Although the motion is not entirely clear, Plaintiff appears to assert that the TDOC, the HCCF, and the Corrections Corporation of America ("CCA"), which operates the HCCF, can be held liable under a theory of failure to train. (ECF No. 32-1 at 2.) However, these allegations are generic and conclusory, as Plaintiff has proffered no actual facts to support such a claim. There is nothing whatsoever in Plaintiff's motion that persuades the Court the order of partial dismissal should be set aside or modified. Therefore, the motion to reconsider is DENIED.

Also on March 23, 2015, Plaintiff filed a motion for expansion of the record, in which he seeks an order directing that he be provided with a copy of his medical records from the HCCF. (ECF No. 32.) Plaintiff filed two identical motion before the complaint was screened (ECF Nos. 5 & 17), which the Court denied in the order of partial dismissal, noting that Plaintiff should seek his records through the normal discovery process instead of filing a motion with the Court (ECF No. 18 at 3-5.) For the same reason, the motion to expand the record is again DENIED.

Plaintiff filed a motion to compel discovery on April 15, 2015 (ECF No. 37), which is accompanied by his Declaration (*id.* at 2-3). Plaintiff first stated that he served various discovery requests on Defendant's counsel on April 10, 2015 (*id.* at 2, 4), which is the same day his motion to compel was mailed from the HCCF (*see* ECF No. 37-1). Plaintiff then stated that he wrote a letter to Defendant's counsel on April 11, 2015, the day *after* the motion was mailed, in which he supposedly pointed out that the discovery was over a month late and requested immediate responses.

2

(ECF No. 37 at 2, 4.) These statements are nonsensical.[2] Furthermore, in response to Plaintiff's motion to compel (ECF No. 39), Defendant's counsel declared that no written discovery requests from Plaintiff had been received as of April 29, 2015 (Pentecost Decl., ECF No. 39-1). As there is insufficient evidence that any discovery requests were properly served on counsel for the Defendant, Plaintiff's motion to compel is DENIED.

Plaintiff filed a document on April 22, 2015, which is titled "Motion for Leave in Opposition to Defendants [sic] Answers." (ECF No. 38.) This document contains only additional arguments concerning Plaintiff's claims and requires no action by the Court. Therefore, the motion is DENIED.

The Defendant also filed a motion to compel discovery on July 6, 2015 (ECF No. 41), stating that discovery requests were propounded to Plaintiff on May 1 2015. When no timely responses were received, counsel advised Plaintiff by letter dated June 12, 2015, that a motion to compel would be filed if his discovery responses were not received within fourteen days (ECF No. 41-2 at 1); however, Plaintiff did not serve any responses. Plaintiff also has not responded to the Defendant's motion to compel.

While Defendant's motion to compel has merit, the Court declines to order Plaintiff to provide any discovery responses. As set forth below, Defendant has demonstrated that she is entitled to judgment as a matter of law on the evidence that is currently in the record. Therefore, Defendant's motion to compel is also DENIED.

---

[2] It appears the motion to compel may have been a template that was used in another case and not completely adapted for use in this proceeding. For example, the brief in support of the motion refers to "excessive force, bodily injury [broken born [sic] and fractures, etc., [and] the denial of procedural due process" (*id.* at 4), none of which have been alleged in this case.

Defendant filed her motion for summary judgment on August 11, 2015. (ECF No. 46.) In accordance with Local Rule 56.1(b), a response to the motion was due within twenty-eight days. Plaintiff did not file a response and did not seek an extension of time in which to do so. Therefore, the motion is ripe for disposition.

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1) give an opportunity to properly support or address the fact;

---

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

4

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

*Id.* at 252; *see also Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical

5

doubt as to the material facts." (footnote omitted)). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The fact that Plaintiff did not respond does not require granting Defendant's motion. Nevertheless, if the allegations of the complaint are contravened by Defendant's evidence and Defendant is entitled to judgment as a matter of law on those facts, then summary judgment is appropriate. *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979).

In the order of partial dismissal, the Court set forth Plaintiff's allegations against Defendant Breitling:

> The complaint alleges that, on an unspecified date in 2013, Plaintiff reported to the HCCF Medical Department complaining of serious chest pain. The medical staff instructed Plaintiff to run in circles in the infirmary. (ECF No. 1 ¶ 11, at 4.) The instruction was given by a Jane Doe nurse and by Defendant Breitling. (*Id.* ¶ 12.) After Plaintiff had been running for ten minutes, he informed the medical staff that "his chest was hurting real bad." (*Id.* ¶ 14.) The nurses and Breitling informed Plaintiff that "you are alright [sic], keep running." (*Id.*) Inmate Perkins was pushing Plaintiff with his hand on Plaintiff's back and, when Plaintiff attempted to stop, Perkins told him that the medical staff knew what they were doing. (*Id.* at 4-5.) Shortly thereafter, Plaintiff had a heart attack, and "the nurses preform [sic] what they believed a medical procedure as though a code to the medical unit was made concerning an inmate was down code-4." (*Id.* at 5.) Plaintiff was taken to the hospital. (*Id.* ¶ 13, at 4.) At that time, the nurses and Breitling apologized to Plaintiff. (*Id.*)

(ECF No. 18 at 5-6.) In support of the motion for summary judgment, Defendant Breitling has submitted her Declaration made under penalty of perjury pursuant to 28 U.S.C. § 1746 (Def.'s Decl., ECF No. 46-3 at 1-5), portions of Plaintiff's medical records (*id.* Ex. A, at 7-11), and the Declaration of Kristy Howell, the HCCF Grievance Coordinator (Howell Decl., ECF No. 46-4).

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson*, 398 F.3d at 874. In this case, Defendant does not dispute that Plaintiff's heart condition was a serious medical condition.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03. The plaintiff

7

must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and also disregards that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838.

Defendant contends that Plaintiff cannot establish the subjective component of an Eighth Amendment claim. In her Declaration, Defendant states that she and the HCCF medical staff provided medical care and treatment to Plaintiff on numerous occasions. (Def.'s Decl. ¶¶ 6-7, ECF No. 46-3 at 2.) On the evening of April 24, 2013, Plaintiff complained of chest pain. He was given aspirin, and an ambulance was requested. An EKG done by the paramedics who arrived with the ambulance was normal, but Plaintiff was transported to the Jackson Madison County General Hospital ("JMCGH") for evaluation. He was returned to the HCCF a few hours later, in the early morning hours of April 25, 2013, with a diagnosis of nonspecific chest pain and no orders for specific treatment; he went back to his housing unit. (*Id.* ¶¶ 8-10, at 2; *id.* Ex. A, at 7-8.)

Based upon her good faith belief regarding his necessary treatment, Defendant states she requested that Plaintiff return to the medical department later on April 25, 2013 for further evaluation. At that time, Defendant administered a stress test, which required Plaintiff to undergo physical exertion. However, a treadmill was not available, so Plaintiff was directed to walk and jog

8

in order to increase his heart rate. Another EKG was done after the exertion, which revealed abnormal results. Therefore, Plaintiff was again taken by ambulance to the JMCGH for evaluation and treatment. At that time, multiple heart stents were implanted. (*Id.* ¶¶ 11-12, at 2-3; *id.* Ex. A, at 7-11.) Defendant states that if she had not evaluated Plaintiff the second time and had not performed the stress test and EKG, Plaintiff's need for heart stents would not have been known, which could have led to further heart disease and possibly his sudden death. (*Id.* ¶ 13, at 3.) Defendant also declares that, in her professional medical opinion, any pain that Plaintiff experienced due to the stress test was the result of appropriate medical testing that was necessary to determine the proper diagnosis and did not exacerbate any of Plaintiff's known medical conditions. (*Id.* ¶ 20, at 4.)

Defendant asserts that she provided Plaintiff with adequate and reasonable medical care at all times, acting in accordance with her professional medical opinion and the relevant community standards of medical care. Relying on her training, experience and judgment regarding what was needed, she provided Plaintiff with the best treatment available. She did not, at any time, ignore, disregard, or act with deliberate indifference toward any of Plaintiff's medical needs, deny Plaintiff appropriate medical care, or cause him to suffer in an inappropriate way. (*Id.* ¶¶ 16-19.)

There is no evidence in the record suggesting that Plaintiff was provided with inadequate treatment for any medical condition or that the Defendant acted with deliberate indifference with regard to any serious medical condition of the Plaintiff. For that reason alone, Defendant is entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim.

Defendant also contends however, that she is entitled to judgment as a matter of law because Plaintiff failed to exhaust his administrative remedies prior to filing this action. Under 42 U.S.C.

§ 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). However, a prisoner is not required to demonstrate exhaustion in his complaint. *Id.* at 216. Failure to exhaust is an affirmative defense on which the defendant has the burden of proof. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

In the Declaration of HCCF Grievance Chairperson Kristy Howell, she states that all HCCF inmates are given an inmate handbook upon their arrival at the facility, which sets forth the grievance procedure. (Howell Decl. ¶ 5, ECF No. 46-4 at 2.) Howell states that all grievances properly filed by inmates are recorded and that her review of the grievances filed by Plaintiff shows he filed no proper grievances concerning the allegations in this case. Because Plaintiff has failed to respond to the motion for summary judgment, he has not refuted Howell's affidavit. Accordingly, Defendant Breitling is also entitled to summary judgment on the basis of failure to exhaust.

For all of the foregoing reasons, the Court concludes there are no genuine issues of material fact for trial in this case and that Defendant is entitled to judgment as a matter of law. Therefore, the motion for summary judgment is GRANTED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The

same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE